Illinois Courts. Mr. Baker. Good morning. May it please the court, my name is John Baker. I am here on behalf of the appellant, Autumn Tibbs. We are here asking that this court reverse a grant of summary judgment that was entered against Ms. Tibbs on an FMLA retaliation claim that she brought. There are really two separate issues that are important for this court. The first question is this question of whether the AOIC was Ms. Tibbs's employer. And I don't know that I did a great job framing the issue in my brief, and so I think I would like to sort of focus on that if it's acceptable to the court. I believe that it's her employer. She was paid by the AOIC. It's clear that it was an employer. So could you address the joint employment and the Whitaker issue, please? And I will, Judge Hamilton. And I think that relying upon it as a joint employer type of theory I think is probably wrong. I don't know that that's the way I would analyze it. I think that Whitaker does present the most critical issue in the case, and that is if AOIC is the employer, then you take a look at Whitaker, and where Whitaker comes in it says, look, if you're not the employer but the employer can't control what's going on, it can't then be liable for the actions of something that it had no ability to control. And I think that in this particular case where we believe Whitaker is at least, we survive Whitaker at least to proceed to trial, is the supervisor of Tibbs was a woman named Barb Mabee. She was the administrator of the courts, and clearly she would have been involved in some of the decisions and some of the history that was submitted up the chain to the other judges who ultimately made the decisions in this particular case. I think that the ultimate decision to terminate was probably made in consultation between two judges. But there were other issues that were relied upon that clearly were involving Barb Mabee. Mabee was an employee of the AOIC. Where did she get her W-2? The AOIC. She was paid by the AOIC. And I think Judge Hamilton's correct though, the Whitaker issue is really what is critical here. The question of who is the employer isn't necessarily as important, I think. Well, this is one of those situations in which who's on first is a problem. Are the court reporters employed by the individual judges? They're not employed, but do they work for the individual judges? Do they work for the court? This seems to be a real problem, right? It does, Judge Keeney. I would agree with that. Which is not unusual in state court systems. It is. I agree that it's not unusual. In Sangamon County, the court reporters, some are assigned to specific judges, some are assigned to a pool. All of them are, I believe, employed by the Administrative Office of the Illinois Courts. And I do believe that the way that it works is that it's the chief judge who has the ultimate authority to terminate the employee. I believe that is correct, that responsibility does rest with the chief judge. In this case, the presiding judge, who was a Sangamon County judge, my client worked in Sangamon County. Most of the administrative affairs occurred within Sangamon County. And so I believe that Judge Graves played a significant role in that, referring it to the chief judge. But our argument, and admittedly we didn't do a very good job in our brief of addressing this, our argument around Whitaker is fairly simple, and that is that Judge, excuse me, Ms. Mabee was involved in some way. She was her supervisor. And the issues that were forwarded to Judge Mitchell for him to rely upon, some of those issues did involve Judge Mabee. So there's at least, in Whitaker there was no relationship, here there is at least some relationship. Is there, okay, you've got to prove intent to retaliate, right? And you've got circumstantial, you argue you've got circumstantial evidence of that. But is there any evidence indicating that Ms. Mabee had any hostility towards the use of was hostile towards it? I don't believe that there's any direct evidence saying that anyone was hostile towards it. What we have here is it's a completely circumstantial and indirect case, where we have an employee who had been on multiple leaves and had some medical issues, and historically I think that Ms. Mabee said she had been a good employee. Right, that's true, but I gather it's undisputed that your client agreed in her deposition that Judge Graves had ordered her on May 25th, 2012, not to take Horton Reporters to the vault, right? Isn't that pretty clear from her deposition? I think from that particular provision, that's the way it reads. I think when you read the deposition in its entirety, it questions that a little bit. What should I look for? She did acknowledge, my client did acknowledge, that she went down there and that she shouldn't have. And contrary to a specific order from the county's presiding judge, correct? I believe that the best way to look at it was to say that she should have checked out the key from the other person, Sandra Murrell, that she didn't do that. The issue had arisen, Judge Hamilton, by way of background facts. There were a lot of keys that had been in circulation for the vault. Ultimately a decision was made, I think through a recommendation by the security personnel, that those keys needed to be consolidated in one place and one person needed to control them. And I think that the key went to Sandra Murrell. I don't think the policy ever was that she wasn't allowed to take someone there. It was that she needed to check out the key, which she did not do. That is accurate. She did not do that. And so I think that there was a violation. I don't think that it was of great significance and I think that they're putting much more weight on it. Well, that's an interesting question. I think I understand your argument that this was so trivial we should treat it, or a jury could find it to be pretextual. On the other hand, if what happened, or at least what the employer believed what happened, was that she violated a direct order from the presiding judge in the county, whether the order was a good idea or a bad idea doesn't seem that important. I would agree with you. So you think there's a factual issue? I do. I think there's a factual issue of what was actually said. I think that my client did acknowledge that she shouldn't have done it. Do we have that laid out, the factual issue laid out in the summary that provision, the written rule? That doesn't matter. No, and I understand, and I agree with Judge Hamilton. I understand the point that if this was a directive that she violated, even if it's trivial, then it could be sufficient to warrant a termination. And I think that her acknowledgment clearly is that she shouldn't have done it. So I think that there is something that can be drawn from that It was something that was not of tremendous significance, that much greater significance is being placed on it now. Let me just ask you very briefly. I had thought this was undisputed. Can you point me to your client's account of this in the evidence presented to the district court? I can. If I can. Do you want me to do it when I have my reply? Would that... It would be better now so that the state has an opportunity to respond. That's fair, Your Honor. This is the factual issue on which your case depends, correct? I think that the factual issue more depends on Whittaker, on getting around Whittaker. You have to win both. We do. We do. I would agree that this is an issue. Yes, I believe it would be document 16-7, page 6. Okay. Thank you, Mr. Baker. Mr. Biscott. May it please the court. My name is Frank Bieschott and I represent the defendant, the Administrative Office of the Illinois Courts. This court should affirm summary judgment for two reasons. First, because the office cannot be held liable for Chief Judge Mitchell's decision to discharge Tibbs. And second, because no reasonable jury could find that Tibbs was terminated in retaliation for taking a leave of absence. On the first issue, the office can only be held liable for Chief Judge Mitchell's discharge decision if it participated in that decision or had the ability to prevent it but failed to do so. Here, the Chief Judge had sole authority to discharge Tibbs and was in fact the person who did so. Therefore, the office could not have taken any preventative action and under Whittaker, it cannot be held liable for Chief Judge Mitchell's decision. Could you address the theory that Ms. Mabee played a role here? Well, there's no evidence that Mabee did play a role in the decision or that she, even if she was involved in the process in some way, that she had any ability to prevent the decision or to change the decision. Because that's the standard in Whittaker, that either she, the office engaged in that conduct or could have prevented it but failed to do so. Here, the Chief Judge oversees the circuit, has sole authority to discipline non-judicial employees, and here the Chief Judge did that. He was the one who decided to postpone the start of the pre-disciplinary process until Tibbs returned from leave. And then he's the one who made the ultimate decision to discharge her after she failed to take part in that process. On to the retaliatory intent issue, no reasonable jury could find that the discharge was taken in retaliation. Could we back up just a second, counsel? Yes. Sorry. As you understand the law, would the plaintiff have any remedy against the state itself or against Chief Judge Mitchell on this theory under the FMLA? Well, it would be whoever engaged in the allegedly retaliatory conduct. Let's assume she's got a good claim on the merits. Did she just sue the wrong person under your theory? Yes. She could recover from the state as the employer of the agent who made the decision to fire her. Well, if Chief Judge Mitchell had been named as a defendant and he did, in fact, retaliate against her, then she could state a claim against Chief Judge Mitchell. The office still wouldn't be held liable because it didn't have control over the ultimate decision. Would that make your clients any happier? It would make, I guess it would make the office happier, but not Chief Judge Mitchell. Right. Right. So they're both agents of the state, right? Yes. Chief Judge Mitchell is an elected official but not an employee of the office. But the office Oh, sorry. Well, I'm trying to understand. Illinois judges are treated as state officials, right? Yes. So under the FMLA, do we focus on, is an individual an employer or is the, can you sue an individual supervisor under the FMLA or do you sue the employer? You sue the employer, but in a joint employer relationship, you can only prevail against the specific employer. Why isn't this just a misnamed defendant, which should be the state of Illinois? Well, TIBS hasn't moved to amend the complaint to change the defendant's name. I know, but we're getting all tangled up in these bureaucratic relationships that are complicated in most state court systems for, between administration and adjudication and so on. Right. But if they're all agents of the same entity, why should we worry about that? Well, because, I mean, it matters for matters of discovery of knowing who the defendant is, who the claims are being made against. But here, ultimately, the court can avoid all that confusion at the once because there's Suppose she had named the state of Illinois as a defendant and just said, look, I don't care whether it was Chief Judge Mitchell or Ms. Mabee or Judge Graves. The state retaliated against me for exercising my rights. Would you have one of these technical defenses to that as opposed to a merits defense? I would have to look into that issue further. Okay. Go ahead to the merits then. Thank you. But, yes, this court can, there are two reasons to affirm summary judgment. And the second is that no reasonable jury could find that TIBS was discharged in retaliation for taking leave. Here, it's undisputed that she violated a direct order from Judge Graves when she took Ruppert to the vault on May 29th. It's also undisputed that, and to the extent that TIBS is arguing that that was a trivial violation, that was not the sole reason for the discharge. At that point, all Chief Judge Mitchell had decided to do was to initiate the predisciplinary process. He had not decided what discipline, if any, was appropriate. It was not until after TIBS had failed to take part in that process that he decided discharge was appropriate in this case. So there's no question of fact for a jury to resolve on the retaliatory intent issue. And unless your Honor has any further questions, the office would ask that you respond. Okay. Thank you, Mr. Bieska. Mr. Baker, you can have a minute if you have anything further. And I thank you, Judge Bozer, but I don't have anything additional to add unless the court has any additional questions for me. Okay, well thank you very much to both counsel. Move to our next